The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| BARRY LONG,<br><br>Plaintiff,<br><br>vs.<br><br>Live Nation Worldwide, Inc. and Ticketmaster LLC,<br>Defendants. | No. 16-CV-01961-TSZ<br><br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>Noted for June 9, 2017 |
|---|---|

## I.   INTRODUCTION

This case is about equal access. The court must determine what equal opportunity and what equal access mean in today's Internet connected society. Barry Long, a Washington resident and Seahawks fan, wants equal opportunity and equal access to attend the football games he loves. Defendants attempt to shift focus from the real issues in this case by making disparaging comparisons to "shakedowns" and "boilerplate ADA lawsuits," but these arguments are specious.[1] The issue in this case is whether Defendants[2] discriminate against Mr. Long based on his disability under the Americans with Disabilities Act or the Washington Law Against Discrimination when defendant's website does not sell accessible seats in the same course and

---

[1] Ironically, Defendants' introduction copies language that was recently the subject of a Rule 11 sanctions case. *Mark v. New Orleans City*, Case No. 15-7103 (E.D. Louisiana 2017)("Unfortunately, there are increasingly widespread reports of vexatious ADA litigation. Courts have described these lawsuits as shakedown schemes for attorney's fees…").

[2] Defendants collectively respond for both Live Nation Worldwide, Inc. and Ticketmaster LLC.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Page 1 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ

CARNEY GILLESPIE ISITT
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

manner as other seats. Because Defendants deny persons with disabilities the opportunity for full enjoyment of goods and services on the same footing as the general public, the court should grant Mr. Long's motion for summary judgment. This is not a "sham lawsuit."

## II.  STATEMENT OF FACTS

Barry Long is a qualified individual with a disability who requires the use of a wheelchair to attend football games at CenturyLink Field, a place of public accommodation. ECF 19 at ¶ 3. Defendants' website: www.ticketexchangebyticketmaster.com ("NFL Ticket Exchange" or the "exchange website") resells tickets to NFL games at CenturyLink Field. ECF 20 at ¶ 1.2. When he has the opportunity, Mr. Long purchases tickets to games searching online including looking at NFL Ticket Exchange. ECF 19 at ¶ 6-8. Defendants' website is a point of entry and it creates a barrier to entry when information about location and availability of wheelchair accessible seating is unavailable. ECF 19 at ¶ 8-10.

Prior to filing suit in this case, no information concerning wheelchair accessible seating was available on NFL Ticket Exchange. ECF 19 at ¶ 9; ECF 19-3. After this lawsuit was filed, Defendants added a link to their webpage that provides a chart which lists all accessible seats in the stadium. ECF 22. Contrary to defendants claim that customers "can immediately determine which seats are accessible," and that the chart "specifically identifies the location of each accessible seat," this chart lists ALL accessible seats by section, row, first seat, last seat, and number of seats. ECF 22-3. The identification of specific location requires laboriously cross-referencing the seating map and available seats, but the newly added chart is not a means by which a customer who needs accessible seats can check for *available* wheelchair accessible seating. Defendants discriminate based on disability by making it more difficult for persons with disabilities to find accessible seating in comparison to the general public.

## III.  REPLY ARGUMENT

Mr. Long is entitled to summary judgment. "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 2 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ

CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

*Arizona ex rel. Goddard v. Harkins Amusement Enters. Inc.*, 603 F.3d 666 (9th Cir., 2010). Mr. Long has sworn to being disabled within the meaning of the ADA. ECF 19 at ¶ 3. Defendants have contracted to participate in the operation of CenturyLink Field, a place of public accommodation. Specifically, Defendants sell and resell tickets, the only legal means for entry, to football games at CenturyLink Field. The potential to bar entry to a place of public accommodation presents a significant nexus between a website and actual physical place. *Nat'l Fed. Of the Blind v. Target Corp.*, 452 F. Supp.2d 946 (N.D. Cal. 2006). Finally, Defendants discriminate against persons with disabilities by failing to sell tickets in the same course and manner on their website; in effect denying Mr. Long entry into a public accommodation on several occasions.

The truly frustrating aspect of this case is that Defendants are in control of every aspect of the web interface and have demonstrated that they can create and maintain a web interface that does not discriminate, as they have in their full retail ticket website. Defendants simply do not choose to do so in this case with their resale website. Defendants could easily label seats available for resale which are wheelchair accessible. Implementation could be as easy as asking resellers in the form used to verify that they are ticket holders whether their seats are wheelchair accessible, and then labeling those seats accessible or not, among many other methods. Defendants do not even argue that making wheelchair seating searchable is not "readily achievable" because it clearly is (and has already been achieved on Defendants' non-resale website). Instead, Defendants argue they have fixed the problems and that Plaintiff's claims are moot.

A.  **Plaintiff's Claims Are Not Moot**

Defendants assert that Mr. Long's claims are moot because barriers were not alleged in the operating complaint. This is simply false: Mr. Long clearly identifies the barriers he encountered in the operative complaint. Defendants note these specific barriers – the exchange website "does not include information for accessible seats in violation of the applicable standards under the ADA and WLAD," and "Defendants' website does not provide the same information about accessible seating as provided about non-accessible seating." ECF 16 at ¶ 4.6 and 4.10.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 3 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



CARNEY GILLESPIE ISITT
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

Despite Defendants' changes to the website, the exchange website still does not provide the same information about accessible seating as it does for non-accessible seating. ECF 22, 22-2, 22-3. Plaintiff continues to allege the same barriers that were clearly plead in his First Amended Complaint.

The exchange website provides information about which seats are available for resale – this service is what Defendants provide the general, non disabled public. Available seats are listed conveniently in a left-hand side scrollable panel. ECF 22-2. This panel does not indicate whether a seat is accessible or not. ECF 22-2. Thus, a non disabled person can use Defendants' website to readily determine if there are tickets available they can purchase and use; a person with a disability cannot.

The ADA and WLAD require that tickets for accessible seats be sold "in the same manner and under the same conditions as all other ticket sales." <u>ADA 2010 Revised Requirements: Ticket Sales</u>, U.S. Department of Justice, https://www.ada.gov/ticketing_2010.htm (last visited June 9, 2017); ECF 22-2. "Accessible seats must be described in enough detail to permit the purchaser to determine if a seat meets his or her needs." *Id.* The exchange website still does not provide information on <u>available</u> <u>accessible</u> seats in the same manner as available seats that are most likely not accessible but could be. The crucial information about whether or not an available seat can be used by the purchaser in the case for someone with a disability cannot be found on the face of the web interface.

Someone with a disability must look through available seats; search through a chart with all accessible seats; cross-reference available seats with accessible seats; and then determine if they are the same seats in question. Moreover, CenturyLink stadium has been known to remove and reinstall accessible seating and it is unclear whether a chart with all accessible seating is up to date. Declaration of Reynoldson ("Decl. of Reynoldson") at ¶ 5. Persons with disabilities are essentially denied the service of finding available accessible seats and therefore denied the opportunity for full enjoyment of the goods and services available to the general public.

Defendants make much of their argument that Plaintiff now *could,* through a cumbersome cross-referencing process not required of non disabled people, eventually determine

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**
Page 4 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ




whether there are accessible seats available on their website. However, the ADA and WLAD do not require that barriers be insurmountable before offering relief. Rather,

> Injunctive relief is available to 'any person who is being subjected to discrimination on the basis of disability' or who has 'reasonable grounds for believing that such person is about to be subjected to discrimination.' 42 U.S.C. § 12188(a)(1). By employing the phrases 'is being subjected to' and 'is about to be subjected to,' the statute makes clear that either a continuing or a threatened violation of the ADA is an injury within the meaning of the Act. A plaintiff is therefore entitled to injunctive relief to stop or to prevent such injury.

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir., 2002) ("Thus, under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury."). If barriers exist that deter someone with a disability from patronizing an accommodation, injunctive relief is available under the ADA.

Defendants complicate a rather simple issue. Mr. Long wants to know what accessible seats are available "in the same manner and under the same conditions as all other ticket sales," and "in enough detail to permit the purchaser to determine if a seat meets his or her needs." <u>ADA 2010 Revised Requirements: Ticket Sales</u>, U.S. Department of Justice, https://www.ada.gov/ticketing_2010.htm (last visited June 9, 2017). The exchange website does not adhere to these DOJ guidelines. Defendants website can be fixed by showing available accessible seating along with available but not accessible seating on the exchange website's front page. Mr. Long does not request the web interface be made to match Defendants' other website; it is mentioned to demonstrate that Defendants are capable of making the proper accommodations. Mr. Long does not claim new barriers and is not attempting to raise surprise barriers in a sinister scheme to dupe defense attorneys. These issues are an ongoing controversy and therefore this case is not moot.

**B.    The Voluntary Cessation Doctrine Applies**

In the alternative, with regard to mootness, the voluntary cessation doctrine applies in this case. The United States Supreme Court has long held that voluntary cessation does not automatically render a case moot. *Friends of the Earth, Inc., v. Laidlaw Environmental Services*,

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**
Page 5 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



528 U.S. 167, 189, 120 S.Ct 693, 145 L.Ed.2d 610 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."). The Court specified, "it is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L.Ed.2d 152 (1982)). If the court finds that there was a voluntary cessation of discriminatory behavior when Defendants provided a chart with all the accessible seats in CenturyLink Stadium, this case would still fail to be moot.

The accessible seating at CenturyLink stadium changes – seats are occasionally removed and reinstalled. Decl. of Reynoldson ¶ 5. "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.,* 528 U.S. at 190. In *Butler v. WinCo Foods, LLC*, Plaintiff challenged defendant's policy against service animals riding in its grocery carts. 613 Fed.Appx 584, 585-86, (9th Cir. 2015). The Ninth Circuit found the district court erred when it dismissed Butler's ADA claim as moot.  Butler's ADA claim fell within the "voluntary cessation" exception to the mootness doctrine. The court reasoned, Defendant must show that it is "absolutely clear" that it "could not reasonably be expected" to revoke the exception or continue to enforce the allegedly improper policy against Butler. The addition of a chart listing all possible accessible seating in reaction to a lawsuit is not sufficient to render the case moot. Defendants could at any time simply remove the seating chart, and cannot meet their burden of showing that it is "absolutely clear" that violations cannot be repeated. An injunction to ensure Defendants' new chart is continually updated is necessary in order to prevent ongoing discrimination.

In determining mootness where a private defendant has voluntarily ceased the conduct at issue, courts consider the following: (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit;  and (3) whether, in ceasing the conduct, the defendant has acknowledged

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**
Page 6 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



liability. S*helly v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. at 189).

There is no indication that Defendants' omission of accessible seating information was unintentional and would not be a continuing and deliberate practice – especially considering that accessible seating information will require updating. Defendants "cessation of offending conduct" has been motivated by the present lawsuit, and it is not clear that defendants have ceased the offending conduct. Certainly, Defendants have not acknowledged liability. This controversy and case has not been rendered moot by placing a chart with all potential accessible seating behind a hyperlink on the exchange website.

### C. All Necessary Parties Have Been Joined

Failure to join indispensable parties "is an affirmative defense for which [the defendant] bears the burden of proof." *Hollander v. Zito*, Case No. 11-cv-00499 (D. Colorado 2011). Where a defendant merely "argues without elaboration" that a party is indispensable and does not present evidence as to why the party is indispensable, the defendant "fails to carry his burden." *Id.*

Defendants claim that CenturyLink Field and all of the tens or hundreds of thousands of individuals who have resold tickets through Defendants' website are indispensable parties, but offers no explanation of how their rights would be affected by this lawsuit. The only support offered for Defendants' assertions is contained in the Luna Declaration, ECF 22-1, which baldly asserts that "Ticketmaster sells resale tickets to Seattle Seahawks games in accordance with the terms and conditions it has agreed to with the operator of the venue and individuals who resell their tickets on the website." ECF 22-1 at ¶10.  No copy of any agreement is provided, and no effort is made to explain exactly how any outcome of this litigation could affect any unexplained aspect of those alleged agreements.

In this lawsuit, Plaintiff seeks injunctive relief to ensure that Defendant will enable him to locate tickets for accessible seats that are available for sale on Defendant's website in the same manner that a non disabled person can.  This injunction can be satisfied by Defendant alone, without requiring any action on the part of any other parties, and without compromising the

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 7 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



interests of any other parties. In fact, Defendants' argument is belied by the fact that they themselves have made much of the fact that they have now added some accessibility information, apparently without causing any difficulties in their contractual relationships. Defendant's bald assertion that the rights of other parties will necessarily be affected is unsupported, is contradicted by their own actions, and should be disregarded.  There are no indispensable parties that have not been joined, and Defendants have failed to meet their burden on this issue.

> **D.    There is no Basis for a Rule 56(d) Continuance**

In order to succeed under Rule 56(d), "parties opposing a motion for summary judgment must make '(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.'" *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.,* 353 F.3d 1125, 1129-30 (9th Cir.2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.,* 784 F.2d 1472, 1475 (9th Cir.1986)), *see* also *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009). The "burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.,* 242 F.3d 1151, 1161 n. 6 (9th Cir.2001). Further, a party seeking discovery must show that without the discovery being sought it lacks the "essential facts" to resist the summary judgment motion. *Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990).

Defendants plainly fail to meet these standards. The discovery Defendants claim to need is irrelevant or nonexistent. Both parties and the Court have all the "essential facts" necessary for the resolution of Plaintiff's claims.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 8 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



Defendants first accuse Plaintiff of faking his disability, insisting that they simply must obtain his medical records. ECF 22, at 20. At the same time, they would have this Court believe that he is prolifically litigious, "specializ[ing] in filing these boilerplate ADA lawsuits," but somehow avoiding detection that he is living a charade as a secretly non disabled person. ECF 22, at 1. Defendants' insulting comments about Mr. Long ironically serve only to illustrate the absurdity of their argument to stall Plaintiff's motion. Defendants have no good-faith belief that they will find any evidence to contradict Plaintiff's sworn declaration that he is a qualified person with a disability. Defendants' claims are exposed as pure ballast by the fact that Defendants *did not even ask for medical records* in their interrogatories and requests for production. ECF 22-8. Defendants' new-found urgency to obtain Plaintiff's medical records is wholly manufactured for the sole purpose to delay for the sake of delay.

Furthermore, Defendants' complaints about not receiving responses to their interrogatories ring hollow. Plaintiff's counsel, on two occasions, requested the routine professional courtesy of a Microsoft Word version of Defendants' interrogatories to make it possible to answer them. Reply Declaration of Christopher Carney, ¶5-6, Exh. A-B. Defendants have completely ignored counsel's request. *Id.,* at ¶6-7. Defendants threaten an immediate motion to compel, but have made no effort to communicate with counsel to schedule a Rule 37(a)(1) conference. *Id.,* at ¶7. Defendants are concerned with their interrogatories only to the extent that they can be used as a desperate excuse to avoid summary judgment.

Defendants next argue that somehow Plaintiff may be subject to a binding arbitration agreement. ECF 22, at 20-21. As an initial matter, it strains credulity that Plaintiff could be bound to arbitrate claims relevant to this lawsuit by virtue of purchasing tickets through Defendants' other website, which is not at issue here. The entire basis of this lawsuit is that

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 9 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



Plaintiff was *unable to purchase tickets* through Defendants' resale website. Thus there is no good faith argument to be made that he could be bound by an arbitration agreement accompanying a purchase. Finally, if there were such an arbitration agreement that could apply to Plaintiff, Defendants would be in possession of it and could simply have produced it with this motion, which they did not. This is because Defendants know that there is no applicable arbitration agreement, and no logical way Plaintiff could be bound by one. Defendants have no good faith basis to request a continuance to look for a non-existent arbitration agreement.

Lastly, Defendants claim that they need to cross-examine Plaintiff concerning his declaration that he called about their website and did not get help, and also about how he came to be in possession of tickets he used to attend other games. There is no relevance to these makeweight arguments, and Defendants make no serious effort to even explain them. Plaintiff's claim is that Defendants' barriers prevented him buying a ticket in the same course as could a non disabled person; the phone call is simply not an essential fact. With respect to the sources of other tickets Plaintiff has purchased, Defendants again did not even ask about that issue in their interrogatories. ECF 22-8.

The issue here is whether Defendants' website violated and continues to violate ADA regulations. The facts relating to that issue are undisputed and Defendants make no legitimate argument that they need more time to conduct relevant discovery.

E. **Defendants' "Evidentiary Objections" are Procedurally Improper and Meritless**

Under Western District of Washington Local Civil Rule ("LR") 7(g), "[r]equests to strike material contained in or attached to submissions of opposing parties shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief[.]" Defendants have violated this rule in submitting their "Evidentiary Objections" as a separate document,

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 10 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



likely in order to evade their 24-page limit. ECF 22-10. Because of this procedural violation, the Court should disregard it.

Even if the Court were inclined to entertain Defendants' objections, they should nonetheless be overruled as they are meritless or have no bearing on the relevant legal issues. The table below contains Plaintiff's responses to the objections:

| Evidence objected to | Plaintiff's response |
|---|---|
| Entirety of Barry Long declaration ("Long Decl.") | There is no basis to exclude the declaration; having been deposed is not a precondition to submit a sworn declaration. |
| Long Decl. ¶7 | Plaintiff is competent to declare that he prefers to purchase tickets from online retailers; this statement is relevant to his intent to do so in the future from Defendants' website if accessibility barriers are removed. |
| Long Decl. ¶8 | In context, it is clear that Plaintiff is referring to Defendants' website; statement is relevant to Plaintiff's encountering accessibility barriers in attempting to buy tickets through Defendants' website. |
| Long Decl. ¶9 | Plaintiff's declaration as a whole is very clear as to the nature of the accessibility barriers he encountered when attempting to purchase tickets on Defendants' website. |
| Long Decl. ¶10 | None of the objections stated go to admissibility. |
| Long Decl. Exh. A | Exhibit A is illustrative of the lack of information identifying accessible seating that Plaintiff encountered on Defendants' website prior to modifications spurred by this lawsuit, facts which are not in genuine dispute. |
| Long Decl. Exh. B | This exhibit is plainly relevant to the Court's consideration of the issues of voluntary cessation and likelihood of recurrence. Defendants do not dispute that it is an accurate reflection of the state of the website at the time Plaintiff attempted to use their website. |
| Long Decl. ¶13, Exh. C | Plaintiff's declaration is from personal knowledge and illustrates the undisputed fact that websites other than Defendants' are capable of allowing users to readily ascertain |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 11 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ



CARNEY GILLESPIE ISITT PLLC
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

| | whether available seats are accessible. |
|---|---|

### F.     There is no Basis to Dismiss Plaintiff's State Law Claims

Defendants prematurely ask the court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) because the court still has original jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States") and 28 U.S.C. § 1343(a)(3)-(4)("The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: … (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote"). Mr. Long's federal ADA claims have not been dismissed. It is premature and not necessary to reach a question of supplemental jurisdiction.

Dated June 9, 2017

    /S/Christopher Carney
CHRISTOPHER R. CARNEY, WSBA NO. 30325

    /S/Conrad Reynoldson
CONRAD REYNOLDSON, WSBA NO. 48187
Attorneys for Plaintiff Barry Long

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Page 12 of 12
Long v. Live Nation, et al, 16-cv-01961-TSZ

CARNEY GILLESPIE ISITT
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM