UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARRY LONG,<br><br>           Plaintiff,<br><br>  v.<br><br>LIVE NATION WORLDWIDE, INC.;<br>and TICKETMASTER LLC,<br><br>           Defendants. | C16-1961 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendants' motion to dismiss or to stay and compel arbitration, docket no. 27.  Having reviewed all papers filed in support of, and in opposition to, defendants' motion, the Court enters the following Order.

**Background**

Plaintiff Barry Long brings this action against defendants Ticketmaster LLC and its parent company, Live Nation Worldwide, Inc., under the Americans with Disability Act ("ADA") and Washington's Law Against Discrimination ("WLAD").  Plaintiff alleges that Ticketmaster operates a website, www.ticketexchangebyticketmaster.com, through which tickets for National Football League ("NFL") games are resold.  <u>See</u> Am. Compl. at ¶ 1.2 (docket no. 16).  Plaintiff further asserts that, in attempting to purchase

ORDER - 1

tickets to a Seattle Seahawks game at CenturyLink Field on the secondary (or fan-to-fan) market, he encountered barriers while using the website at issue, including the website's failure to provide information about wheelchair-accessible seating that complies with the Department of Justice's 2010 ADA Standards.  See id. at ¶¶ 4.5-4.10; see also 28 C.F.R. §§ 35.138 & 36.302.  Plaintiff made no purchase via www.ticketexchangebyticketmaster.com, and was not prompted to "click" on the link to, review, or consent to, the website's Terms and Conditions.  In moving to dismiss or stay and compel arbitration, defendants explicitly disclaim any reliance on the Terms and Conditions or "browsewrap" agreement on the ticket exchange website.  See Defs.' Reply at 7-8 (docket no. 31).

Instead, defendants contend that plaintiff is required to arbitrate his ADA and WLAD claims relating to the ticket exchange website because he previously used a different website maintained by Ticketmaster, namely www.ticketmaster.com, via which he became bound by a "clickwrap" agreement in connection with his purchases of tickets for several music concerts and baseball games between June 6, 2012, and April 9, 2017.  See Defs.' Motion at 2-7 (docket no. 27); Ex. G to Tobias Decl. (docket no. 27-8).  From January 27 to October 31, 2012, the Terms of Use on the Ticketmaster website provided as follows:

> Live Nation and you agree to arbitrate all disputes and claims between us.  This agreement to arbitrate is intended to be broadly interpreted.  It includes, but is not limited to:
>
> - claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, including, without limitation, claims relating to your use of Live Nation's website www.livenation.com, or Ticketmaster's website www.ticketmaster.com,

ORDER - 2

| | |
|---|---|
| 1 | as the case may be (collectively, the "Websites"), any statements or advertising on the Websites, your purchase of tickets through the Websites, any fees or other amounts you paid to Live Nation in connection with the purchase of tickets through the Websites, and/or the delivery of tickets to you that you purchased through the Websites; |

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and

- claims that may arise after the termination of this Agreement.

Tobias Decl. at ¶ 10 & Ex. H (docket nos. 27-1 & 27-9).  From November 1, 2012, to the present, the arbitration provision of the "clickwrap" agreement remained virtually the same, reading in relevant part:

> Any dispute or claim relating in any way to your use of the Site, or to products or services sold or distributed by us or through us, will be resolved by binding arbitration rather than in court, with the following exceptions:
>
> - You may assert claims in small claims court if your claims apply;
>
> - If a claim involves the conditional license granted to you as described in the Ownership of Content and Grant of Conditional License section above, either of us may file a lawsuit in a federal or state court located within Los Angeles County, California, and we both consent to the jurisdiction of those courts for such purposes; and
>
> - In the event that the arbitration agreement in these Terms is for any reason held to be unenforceable, any litigation against us (except for small-claims court actions) may be commenced only in a federal or state court located within Los Angeles County, California, and we both consent to the jurisdiction of those courts for such purposes.

*Id.* at ¶¶ 2, 11-15 & Exs. A, I-M (docket nos. 27-1 – 27-2 & 27-10 – 27-14).  The term "Site" is defined as "the Ticketmaster sites and applications where this [*i.e.*, the Terms of Use] appears."  *Id.*  The Terms of Use associated with the Ticketmaster website are different from the Terms and Conditions that appear on the NFL ticket exchange website.

ORDER - 3

*See* Ex. A to Carney Decl. (docket no. 30-1).  Thus, for purposes of the arbitration provision in the Terms of Use on the Ticketmaster website, the term "Site" does not refer to the NFL ticket exchange website.

**Discussion**

Plaintiff does not dispute that he is bound by the arbitration agreement set forth in the Terms of Use related to the Ticketmaster website, but he argues that such arbitration agreement does not apply to the ADA and WLAD claims asserted in this action.  He is correct.  Under the Federal Arbitration Act, a written arbitration agreement in "a contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  In determining whether to compel arbitration, the Court must assess (i) whether the parties' contract, if any, evidences a transaction involving commerce; (ii) whether the parties' contract, if any, contains a valid arbitration provision; and (iii) whether any arbitration agreement encompasses the dispute at issue.  *See* <u>Boardman v. Pac. Seafood Group</u>, 822 F.3d 1011, 1017-18 (9th Cir. 2016).  Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute that he or she did not agree to arbitrate.  *Id.* at 1019.

Defendants seem to concede that, because plaintiff did not make any purchase through the website at issue, the Terms and Conditions on the NFL ticket exchange website cannot be viewed as a contract evidencing a transaction involving commerce. Thus, the Court need not engage in further analysis concerning the arbitration clause in the Terms and Conditions of the NFL ticket exchange website, and to the extent that the

ORDER - 4

arbitration provisions in the prior and current Terms of Use on the Ticketmaster website do not encompass the present dispute between the parties, the Court cannot compel plaintiff to arbitrate his ADA and WLAD claims.

In construing the Terms of Use on the Ticketmaster website, the Court must look to the contract-interpretation principles developed under state law, while giving due regard to the federal policy favoring arbitration.  *See id.* at 1018.  Washington courts follow the "objective manifestation" theory of contracts.  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005).  Under this approach, the focus is on "the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties."  *Id.*  Words in a contract are assigned their reasonable, "ordinary, usual, and popular" meaning unless the agreement "clearly demonstrates a contrary intent."  *Id.* at 503-04.  If the parties' intent can be divined from the actual words within the four corners of the document, extrinsic evidence will not be considered.  *See id.* at 503-04; *see also id.* at 504 (Washington courts "do not interpret what was intended to be written but what was written" (clarifying the holding of *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990))).

Since November 1, 2012, the arbitration provision set forth in the Terms of Use on the Ticketmaster website has applied only to disputes or claims "relating in any way to your use of the Site, or to products or services sold or distributed by us or through us." Exs. A & I-M to Tobias Decl. (docket nos. 27-2 & 27-10 – 27-14).  Plaintiff's ADA and WLAD claims do not relate to plaintiff's use of the "Site," which does not, by definition, include www.ticketexchangebyticketmaster.com, or to any products or services sold or

distributed by or through defendants.  Thus, contrary to defendants' assertion, the Terms of Use in effect since November 1, 2012, do not require plaintiff to arbitrate the claims pleaded in this litigation.

Between January 27, 2012, and October 31, 2012, the arbitration clause was not itself as limited as the current provision, stating simply that the parties "agree to arbitrate all disputes and claims between us." *See* Ex. H to Tobias Decl. (docket no. 27-9 at 7). At the time, however, the Terms of Use governed only "the use of ticketmaster.com and mobile versions thereof," which apparently contained "sections" where tickets could be resold or purchased on the secondary market. *See id.* (docket no. 27-9 at 2).  This scope was reiterated in the arbitration provision, which set forth as examples of covered disputes "claims relating to your use of Live Nation's website www.livenation.com, or Ticketmaster's website www.ticketmaster.com." *See id.* (docket no. 27-9 at 7). Defendants make no assertion that plaintiff used "sections" of www.ticketmaster.com, www.livenation.com, or any mobile versions to attempt to buy Seattle Seahawks tickets. The website now at issue, www.ticketexchangebyticketmaster.com, is not mentioned in the arbitration agreement, and it seems not to have existed during the period that the 2012 Terms of Use were in effect.  Plaintiff will not be deemed to have agreed to arbitrate claims relating to his use of a website before the website was even created.

Defendants' reliance on *Nevarez v. Forty Niners Football Company, LLC*, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017), is misplaced.  Unlike in the case before the Court, in *Nevarez*, the plaintiffs used the Ticketmaster website to purchase tickets and parking passes for events at Levi's Stadium in Santa Clara, California, the home field for

ORDER - 6

the NFL team known as the San Francisco Forty Niners. *Id.* at *1. The plaintiffs in *Nevarez* created Ticketmaster accounts, logged into their accounts, and bought tickets and parking passes. *Id.* at *1-*3 & n.1. At each step, plaintiffs were required to assent to the Terms of Use, which included an arbitration provision. *Id.* at *2-*3. *Nevarez* does not support defendants' view that a "clickwrap" agreement, which binds a party with respect to transactions on the associated website, also requires such party to arbitrate grievances concerning an entirely different website through which no purchase was made. Defendants have cited no authority in which a "clickwrap" or "browsewrap" agreement has been extended beyond the transaction or website use that itself gave rise to the agreement.[1]

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss or to stay and compel arbitration, docket no. 27, is DENIED.

IT IS SO ORDERED.

Dated this 8th day of November, 2017.

Thomas S. Zilly
United States District Judge

---

[1] Defendants' argument that the arbitrator, not the Court, should decide whether the dispute at issue must be arbitrated also lacks merit. Whether the parties agreed to arbitrate arbitrability is a question for the Court unless the parties "clearly and unmistakably" provided otherwise. *See AT&T Techns., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Because the Terms of Use on the Ticketmaster website are not binding on plaintiff, any clause therein delegating arbitrability to the arbitrator does not constitute the "clear and unmistakable" evidence required to remove the issue of arbitrability from the Court's purview.

ORDER - 7