The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARRY LONG,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Live Nation Worldwide, Inc. and Ticketmaster LLC,<br>　　　　Defendants. | No. 16-CV-01961-TSZ<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.　INTRODUCTION

There are two motions for summary judgment before this court.[1] Defendants move for summary judgment, relying on the same arguments asserted in their response to Plaintiff's motion for summary judgment. In essence, Defendants claim no changes need to be made to the resale website, but people with mobility disabilities still cannot be certain that seats will be wheelchair accessible if the tickets are purchased from Defendant's resale website, and accessible tickets are not sold in the same manner as other tickets are sold. The court should grant Plaintiff's motion for summary judgment because Defendants deny persons with disabilities the opportunity for full enjoyment of the goods and services available to the general public.

---

[1] *See* ECF 18-19, 22-25, 34, 36, 38.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
Page 1 of 17
Long v. Live Nation, ET AL., 16-cv-01961-TSZ



Contrary to Defendants' arguments, the resale website does not sell accessible tickets in the same manner. Plaintiff's claims continue to be valid and are not moot. Defendants do not comply with Revised 2010 Ticketing Standards, and Defendants' noncompliance is not the result of a policy decision. Requests that Defendants change the resale website have been made, and Defendants simply refuse to change the website. Defendants can make the necessary changes to their resale website without involving third-parties. Plaintiff wants Defendants to change their resale website in order for people with disabilities to be able to purchase tickets for wheelchair accessible seats. These changes are reasonable and necessary and readily achievable.

Ultimately, Defendants discriminate against Plaintiff based on his disability by providing an unequal purchasing situation for accessible seating on its resale website when Defendants have the means, the necessary information, and seating charts to provide compliant ticket sales. The discriminatory ticket sales present a barrier to entry, which violates the Americans with Disabilities Act and the Washington Law Against Discrimination. For these reasons, Plaintiff respectfully asks the court to find in his favor and grant injunctive relief and have the Defendants change the resale website so that it provides enough detail to permit the purchaser to determine if a seat meets his or her needs.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wash. 2d 265, 275, 979 P.2d 400, 406 (1999); Fed. R. Civ. P. 56. Notably, Defendants chose not to use the procedure for cross motions for summary judgment, which allows an abbreviated briefing schedule and shorter page limits. L.C.R. 7(k). Nonetheless, Defendants attempt to rely on cross-motion standards for evidence. ECF 38 at 3, n.1. However, in a motion for summary judgment, the facts and reasonable inferences from the facts are considered in the light most favorable to the nonmoving party. *Hertog, ex rel. S.A.H.*, 138 Wash. 2d 265, 275 (1999);

## III. STATEMENT OF FACTS

Plaintiff requires the use of a wheelchair to attend football games at CenturyLink Field, a place of public accommodation. ECF 19 at ¶ 3. Defendants' resale website is a point of entry and it

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
Page 2 of 17


CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

creates a barrier to entry when information about location and availability of wheelchair accessible seating is incomplete. ECF 19 at ¶ 8-10. Plaintiff still cannot identify which seats are wheelchair accessible when attempting to purchase tickets through the resale website.

A.   **The Resale Website Does Not Sell Accessible Tickets In The Same Manner As All Other Tickets**

In order to identify accessible seating, customers must use a separate dropdown table hidden behind a hyperlink. ECF 38, at 12. "Venues and third-party sellers must provide the same information about accessible seats as provided about non-accessible seats, using the same text and visual representations."  Revised 2010 ADA Standards for Ticket Sales (https://www.ada.gov/ticketing_2010.htm). A separate table behind a hyperlink is not "us[e] of the same text and visual representations." Rather than for convenience's sake, as defense suggests, there is no other way to identify wheelchair accessible seating. Id. Moreover, this method is unreliable.

The dropdown table does not provide sufficient information for an individual who uses a wheelchair to find the open spaces which accommodate wheelchairs. The comprehensive list of ADA locations on the Exchange website includes companion seats, which do not accommodate a wheelchair. Without more information, an individual who requires a wheelchair may purchase a companion seat accidentally. This problem is illustrated by a screenshot of the ADA seating provided on the Exchange website. ECF 37 Exh. B.

The Exchange website purports to offer for sale accessible seating in Section 100A, Row J, seats 8 and 9. Carney Decl. Exh. B. No further information is offered or available on the Exchange site. Id. Defendants' retail site, by contrast, reveals several problems with this listing. First, there does not appear to exist a row "J" in section 100A. ECF 37 Exh. C-F. The listing could refer to section 100A, Row J2, seats 8 and 9, or to section 100, Row J, seats 8 and 9. ECF 37 Exh. C-F. In either case, the ticketmaster.com website makes available to purchasers the information that all of those seats are listed as "seat with back and armrest," meaning it could not accommodate a wheelchair. ECF 37 Exh. C-F.  This is information made available to persons with disabilities by Defendants' retail site, yet they claim it would be impossible to make the



same information available to Plaintiff on the Exchange website. ECF 37 Exh. A at 66:15-67:8, 68:20-69:14, 71:20-73:20, 74:7-75:6.

B.   **Defendants' Attempts To Show Plaintiff How To Find Accessible Seating During Deposition Is Not Proof That Defendants Resale Website Complies With Revised 2010 Ada Standards**

Although opposing counsel led Plaintiff through a hypothetical purchase on paper during the deposition, there was no verification that the hypothetical purchase would have actually been a wheelchair accessible seat rather than a companion seat. ECF 34-6, at 66:15-67:8, *see also* 67:14-21.

> Q. So if we'd seen the whole screenshot here, in the upper right-hand corner, we would have seen "Click here for ADA locations"?
> A. Correct.
> Q. And if you click on that, you get a drop-down box of ADA locations.
> A. You get a drop-down box with a list of ADA seats throughout the stadium. It's a drop-down list. It's not interactive. That's a yes.
> MR. HURLEY: Let's mark this as Exhibit 8.

Defendants stopped the demonstration after showing that there is a drop down table with a list of ADA seats throughout the stadium. *Id*. More importantly, as shown above, the drop-down table is unreliable.

Defendants also attempted another method of finding accessible seating at deposition. Defendants' alternate method relies on information that is inputted by ticketholders reselling tickets; there is information that is revealed after clicking on another link for "more details." *Id*. at 68.

> Q. Okay. And you can see, for example, I've clicked on the one for more details.
> A. Uh-huh.
> Q. And --
> A. Yes.
> Q. -- it shows where the seat is located, 100 level.
> A. Correct.
> Q. Have you ever searched through the seats on Ticket Exchange by Ticketmaster for the word "accessible"?
> A. No. Is that a searchable field for – so I could search every single ticket that's available in that field?

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
Page 4 of 17



> Q. My understanding is that if the people selling the seats decide to put the word "accessible," "wheelchair" or "companion" in there, that it shows up. Since you haven't tried to sell tickets through this --
> A. Correct.
> Q. -- you haven't gone through the process of the information you need to submit, but somebody who has a wheelchair space, we believe, would put that in there because, otherwise, they're going to be selling the wrong type of ticket in not describing it correctly.
> MR. CARNEY: I'll just note for the record that Counsel is testifying at this point.
> MR. HURLEY: And I will agree that's just what I did, by way of laying background.
> Q. So it sounds like you haven't -- you haven't searched through the more details section of Ticket Exchange by Ticketmaster?

ECF 34-6 at 68:12-69:20. Besides the problems with speculation and leading questions, Defendants' suggest the information behind the link for more details is searchable, but it is not. Declaration of Barry Long ("Long Decl.") at ¶ 4. There is no search field and the find function in the Google Chrome browser cannot search information behind a hyperlink. Long Decl. ¶¶ 3-5. In other words, someone trying to search "accessible" would need to click each "more details" link on the page before the find function would find the word accessible. Defendants' method for finding accessible seating is flawed.

There appears to be no reliable way to purchase tickets for wheelchair accessible seating from Defendants' resale website. If using the drop-down table behind the "Click Here for ADA Seating" hyperlink, there is uncertainty whether one would be purchasing wheelchair accessible seats or companion seats. If clicking the "more details" hyperlink, one would need to click more details with every seat to search for accessible seating – a daunting task that is not required for people searching for non-accessible seating. Moreover, the information behind the "more details" hyperlink is supplied by the ticket holder and may not include information about accessibility. Defendants introduced the Plaintiff's failure to use the browser search function as a purported "fact," intended to

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
Page 5 of 17



show that the resale website has the information to properly identify wheelchair accessible seating, but this "fact" is a red herring. The intentional misdirection obfuscates the point that one cannot use the resale website to reliably find and purchase wheelchair accessible seating. The methods the defense introduces are unreliable, and even if they were not, the extra steps necessary for people who need wheelchair accessible seating cannot purchase the tickets in the same manner as those seeking regular seats.

## IV. ARGUMENT

A. **Plaintiff Continues To Have A Legitimate Cause Of Action And Is Entitled To Summary Judgment**

Defendants are not entitled to summary judgment. Rather, for reasons described in ECF 18, Plaintiff is entitled to summary judgment. "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. *Arizona ex rel. Goddard v. Harkins Amusement Enters. Inc.*, 603 F.3d 666 (9th Cir., 2010). Plaintiff has sworn to being disabled within the meaning of the ADA. ECF 19 at ¶ 3. Defendants have contracted to participate in the operation of CenturyLink Field, a place of public accommodation. Specifically, Defendants sell and resell tickets, the only legal means for entry, to football games at CenturyLink Field. Considering the potential to bar entry to a place of public accommodation presents a significant nexus between a website and actual physical place. Finally, Defendants discriminate against persons with disabilities by failing to sell tickets in the same course and manner on their website; in effect denying Mr. Long entry into public accommodations.

Defendants are in control of every aspect of the web interface and have demonstrated that they can create and maintain a web interface that does not discriminate. Defendants simply do not choose to do so in this case. Defendants could easily label seats available for resale that are

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 6 of 17



wheelchair accessible. Defendants do not even argue that making wheelchair seating searchable is not "readily achievable" because it clearly is. Instead, Defendants argue they have fixed the problems and that plaintiff's claims are moot. However, Plaintiff's claims are not moot and remain a valid case and controversy.

**B.      Plaintiff's Claims Are Not Moot**

Defendants assert that Mr. Long claims are moot because barriers were not alleged in the operating complaint, but Plaintiff clearly identifies the barriers he encountered in the operative complaint. ECF 16 at ¶ 4.6 and 4.10. The resale website "does not include information for accessible seats in violation of the applicable standards under the ADA and WLAD," and "Defendants website does not provide the same information about accessible seating as provided about non-accessible seating." *Id*. Furthermore, the original claims continue to be an issue. ECF 22.

Despite changes Defendants appear to have made to the website, the exchange website does not provide same information about accessible seating in the same manner as it does for non-accessible seating. ECF 22, 22-2, 22-3. The ADA and WLAD require that tickets for accessible seats are sold "in the same manner and under the same conditions as all other ticket sales." 2010 Revised ADA Standards for Ticket Sales (www.ada.gov/ticketing_2010.htm); ECF 22-2.  The resale website provides information about which seats are available by resale, but Defendants provide the general public information in a graphic visual presentation and hides information about accessible seating behind hyperlinks. *See* ECF 22-2. Available seats are listed conveniently in a left-hand side scrollable panel next to a seating chart, but this panel does not indicate whether a seat is accessible or not nor is there accessible information about accessible seating included in the seating chart. ECF 22-2.

Defendants' resale website provides information on accessible seating through a table that can be accessed by clicking on a hyperlink. "Venues and third-party sellers must provide the same information about accessible seats as provided about non-accessible seats, using the same text and visual representations." *Id*. Defendants claim that a separate table of accessible seating hidden behind a hyperlink provides the same information about accessible seats as non-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
Page 7 of 17
Long v. Live Nation, ET AL., 16-cv-01961-TSZ



accessible seats, but clearly this practice does not use the same text and visual representations. In addition, the Revised 2010 ADA Standards for ticket sales requires: "Accessible seats must be described in enough detail to permit the purchaser to determine if a seat meets his or her needs." *Id*.

Considering the potential to mistake a companion seat for an accessible seat on the drop-down table, the resale website fails to provide the crucial information about whether or not an available seat can be used by someone who requires the use of a wheelchair. Persons with disabilities are denied the service of finding available accessible seats and therefore denied the opportunity for full enjoyment of the goods and services available to the general public.

The ADA and WLAD do not require that barriers be insurmountable before offering relief.

> Injunctive relief is available to 'any person who is being subjected to discrimination on the basis of disability' or who has 'reasonable grounds for believing that such person is about to be subjected to discrimination.' 42 U.S.C. § 12188(a)(1). By employing the phrases 'is being subjected to' and 'is about to be subjected to,' the statute makes clear that either a continuing or a threatened violation of the ADA is an injury within the meaning of the Act. A plaintiff is therefore entitled to injunctive relief to stop or to prevent such injury.

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir., 2002) ("Thus, under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury."). If barriers exist that deter someone with a disability from patronizing an accommodation, injunctive relief is available under the ADA. Here, Plaintiff is deterred from using Defendants' resale website because of known barriers.

Furthermore, even if Plaintiff were able to locate accessible seating one time and make a purchase, it does not render Plaintiff's case moot. "Simply because the Plaintiff ultimately achieved his goal of making a purchase does not mean that he did so in a manner comparable to that of non-wheelchair-using patrons." *Tatum v. Doctor's Assocs., Inc.,* No. CV 14-2980, 2016 WL 852458, at *6 (E.D. La. Mar. 4, 2016) citing *Gathright-Dietrich v. Atlanta Landmarks, Inc*, 435 F. Supp. 2d at 1226 (applying the following test to determine whether a barrier exists: "does

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 8 of 17



CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

the alleged barrier, under the circumstances of a particular case, actually or effectively preclude a wheelchair patron from using an existing facility on terms sufficiently comparable to non-wheelchair patrons?"); *Panzica v. Mas-Maz, Inc.*, No. 05-2595, 2007 WL 1732123, at *6 (E.D.N.Y. June 11, 2007); *Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.*, 975 F. Supp. 2d 1374 (N.D. Ga. 2013).

Defendants claim accessible seats are available "in the same manner and under the same conditions as all other ticket sales" because customers are provided information about (1) what section the seats are located, (2) what row the seats are located, (3) the number of seats, (4) the price, (5) the quantity of tickets available, and (6) specific notes about the seats provided by the reseller. However, the important information about accessibility has been hidden behind hyperlinks for "more details" or for "ADA Seating." Someone with a disability must click on every hyperlink with "more details" or click on the hyperlink for ADA seating in order to find the table with all accessible seating, which may wheelchair accessible or could be a companion seat. Defendants must provide people who require wheelchairs enough detail to permit the purchaser to determine if a seat meets his or her needs; and on the resale website, Defendants do not. Therefore, there is an ongoing controversy and therefore this case is not moot.

C.  **No Discriminatory Policy Is In Dispute, Rather Defendants' Website Violates 2010 ADA Standards For Ticket Sales**

In the alternative, Defendants argue that "[t]he detail and information provided for all tickets on this Website (as opposed to the other sites) is less than the amount of detail provided for ADA seating." This convoluted argument is that, if the website provides no information about the location of wheelchair spaces, there is no discrimination because the general public equally risks purchasing a ticket for a seat they cannot use. Thus, defendants argue this choice to provide everyone with equally bad information is a policy decision. This interpretation of the statute is absurd.

Identifying accessible seating is required by the ADA. Under Identification of Available Accessible Seating, the 2010 Revised Standards for ticket sales provides:



> Venues and third-party sellers must provide the same information about accessible seats as provided about non-accessible seats, using the same text and visual representations. Typically information about location, price, view, and seat availability is provided. *Accessible seats must be described in enough detail to permit the purchaser to determine if a seat meets his or her needs.*

2010 Revised ADA Standards for Ticket Sales (https://www.ada.gov/ticketing_2010.htm). These standards are an affirmative obligation -- not a matter of policy. "[E]ven when dealing with a 'service or policy,' Design Standards specifically addressing an issue are a better benchmark than more general prohibitions found in the statute itself." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1220 (10th Cir. 2014) citing *Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F. 3d 1165 (9th Cir. 2010).

Defendants characterize Plaintiff's claims against a discriminatory ticketing policy, but the 2010 Revised Standards are controlling. *Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F. 3d 1165 (9th Cir. 2010) ("In sum, Chipotle's treatment of Antoninetti during his visits as a customer of the two restaurants violated the Disabilities Act, because it did not comply with the Guidelines."). Here, plaintiff does not challenge a noncompliant policy; Defendants violate 2010 Revised Standards for ticket sales.

**D.     Plaintiff Has Requested On Multiple Occasions That Defendants Make It Possible To Purchase Verified Accessible Seating**

Defendants' assertions that Plaintiff never requested policy modification before litigation are simply false. From the deposition, Plaintiff describes talking to customer service representatives of Ticketmaster:

> A. I was trying to figure out how I could get accessible tickets through the Exchange so we could go to the game.
> Q. And – that even though the game is sold out and there's still random tickets available -- through the Exchange, my hope was that we could get season tickets from a season ticket holder that was exchanging their tickets or something like that where we could get tickets to the game. But there was no way to guarantee that those tickets -- because there were some available but there was no way to guarantee those tickets were accessible at all.
> Q. Okay. You said there were some available. How did you know there were some available?
> A. In talking to the Ticketmaster.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 10 of 17
Long v. Live Nation, ET AL., 16-cv-01961-TSZ



CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

> Q. Okay. Did you during that phone call pull up the accessibility chart that was on the main Ticketmaster page?
> A. The main Ticketmaster page, yes, because there was nothing on the Exchange page.
> Q. Did you compare the seats that were available with the accessible ticket chart?
> A. I was trying but the Ticketmaster rep couldn't guarantee that that seat that may have even had a wheelchair sitting on it was actually accessible.

ECF 37 Exh. A at 43:19-44:25.

> Q. Rather than just sell the tickets back and then buy others, you wanted to do it with the Exchange --
> A. That's exactly right.
> Q. Okay.
> A. Right, right. So like I said, then I went to Ticketmaster and tried to do it through the customer service rep at Ticketmaster who couldn't -- couldn't help. Neither one of them could help.

ECF 37 Exh. A at 29:8-29:18.

> Q. Okay. And were you able to do that on the Exchange website?
> A. No.
> Q. And why not?
> A. Because it didn't allow me to find the same type of accessible seating in the same location or the same general area that I was in.
> Q. So you went --
> A. So I went to the Ticket Exchange. I got nowhere with Ticket Exchange. I actually called Ticketmaster, and the rep at Ticketmaster couldn't help me. I actually talked to two different people at Ticketmaster. And then after an hour of unsuccessful customer service experience there, I actually called the Seattle Sounders and worked with one of the Seattle Sounders season ticket holder contacts that I had, and they told me to wait until an hour before the game and then come to the main ticket booth at the stadium because then the Sounders owned the ticketing, Ticketmaster didn't manage it anymore, and they could get me seats that I needed.
> Q. Okay.
> A. Which they did.

ECF 37 Exh. A at 25:19-26:17. If the law required a modification be requested, plaintiff requested accommodations on multiple occasions seeking information on available accessible seating. Information on available accessible seating and its location needs to be added to Defendants' Exchange website in the same manner and format in order for the exchange website to properly identify accessible seating.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
Page 11 of 17
Long v. Live Nation, ET AL., 16-cv-01961-TSZ



### E. The Changes Necessary To Defendants' Resale Website Are Reasonable And Readily Achievable

Defendants continue to argue the present issues as if there were no obligation to meet the 2010 Revised Standards for Ticket Sales. Treating the noncompliance as a policy decision, defendants assert a test on whether an accommodation is reasonable relying on *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) (holding the PGA Tour must accommodate Martin's disability by allowing him to use a golf cart between holes). The court looks to a proper construction of the term "discrimination," which is defined by Title III to include

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, *unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*

§ 12182(b)(2)(A)(ii) (emphasis added). The onus is on Defendants to demonstrate that making modifications would fundamentally alter the nature of its services. Here, Plaintiff asks Defendants to use a seating chart that is already available to them or alter the resale website to identify accessible seating. This request is not unreasonable, and it actually extends Defendants' services to people with disabilities. The nature of services is not altered at all.

Changing the resale website to comply with 2010 Revised Standards for Ticket Sales is reasonable and "readily achievable."

> The term "readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--
>   (A) the nature and cost of the action needed under this chapter;
>   (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>   (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>   (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
Page 12 of 17
Long v. Live Nation, ET AL., 16-cv-01961-TSZ



CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C.A. § 12181. In the present case, Live Nation Worldwide and Ticketmaster are in the business of providing online ticket sales. It is a multibillion dollar business with revenue estimated at $8 billion in 2007 with over 142 million tickets sold. (https://en.wikipedia.org/wiki/Ticketmaster). The cost of changing a website to include a seating chart that is already owned and run by Ticketmaster would be negligible.

Defendants already operate a retail ticket sales website that identifies accessible seating and complies with the 2010 Revised Standards for this particular venue. ECF 38 at 3. ("[C]ustomers can use this seating map to determine the exact location of accessible seats when purchasing tickets to games through the direct sales website."). Using the same text and visual representations to resell tickets would bring the resale website into compliance with ADA standards. These actions would prevent discrimination against persons with disabilities. Bringing the resale website into compliance with the ADA standards is necessary to stop discrimination and would be a reasonable course of action.

F.     **All Necessary Parties Have Been Joined**

In this lawsuit, Plaintiff seeks injunctive relief to ensure that Defendant will enable him to locate tickets for accessible seats that are available for resale on Defendant's website. This injunction can be satisfied by Defendant alone, without requiring any action on the part of any other parties, and without compromising the interests of any other parties. In fact, Defendants admit that the location of accessible seating cannot be determined by the seating chart on the direct sales website during the deposition:

> A. This is Ticketmaster's main website.
> Q. Okay. But you can buy resale --
> A. That's correct.
> Q. -- seats here?
> A. Yeah. And the verified aspect of this, I believe, and we can look into this -- but I believe that when they verify that this is an accessible seat when they say that it's wheelchair accessible, that it doesn't have a chair or a seat already in that space. That's what the verified means for this. But when it says that it's an open space for a wheelchair, then that's what you are going to get.
> Q. Okay.


CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

> A. Because, again, that goes to what I was explaining earlier about the three or four different codes. One of the codes is a removable seat, one of the codes is an open area that has nothing. That's what this verified stands for.
> Q. Okay. So if you buy --
> A. I use this.

Plaintiff's Depo at 63:1-63:20. There are no indispensable parties that have not been joined. Defendant's bald assertion that the rights of other parties will necessarily be affected is unsupported, makes no sense, and should be disregarded.

Defendant claims that CenturyLink Field and all of the tens or hundreds of thousands of individuals who have resold tickets through Defendants' website are indispensable parties, but offers no explanation of how their rights would be affected by this lawsuit. The only support offered for Defendant's assertions is contained in the Luna Declaration, ECF 22-1, which baldly asserts that "Ticketmaster sells resale tickets to Seattle Seahawks games in accordance with the terms and conditions it has agreed to with the operator of the venue and individuals who resell their tickets on the website." ECF 22-1 at ¶10. No copy of any agreement is provided, and no effort is made to explain exactly how any outcome of this litigation could affect those alleged agreements.

In addition, Defendants argue that the Seahawks are an indispensable party citing a hypothetical in the deposition in which the Seahawks insert a seat into a wheelchair space. ECF 34-6 at 93:11-25. The proffered hypothetical is not the lawsuit that is in front of this court. Plaintiff is suing Defendants because is deterred from using Defendants' resale website because it is not properly identify wheelchair accessible seating and discriminates against persons with disabilities by utilizing an inferior table to show accessible seating when it uses a compliant seating chart on its main website. The Seahawks are not an indispensable party to changes on Defendants resale website.

**G.     Defendant Can Provide The Relief That Plaintiff Seeks Without Naming More Parties**

Defendants are more than capable of changing the website alone to comply with ADA standards. It is not necessary to join the owners of CenturyLink Field, and courts have found that



websites are places of public accommodations for purposes of the ADA. Courts should find a website is a public accommodation for purposes of the ADA if there is a sufficient "nexus between the challenged service and the place of public accommodation." See Statement of Interest of the United States of America, *Gil v. Winn-Dixie Stores, Inc*, No. 16-CV-23020-RNS (S.D. Fla. December 12, 2016) (website has a sufficient nexus to its physical stores because barriers on the website impede full and equal enjoyment of goods and services offered at place of public accommodation); *Gomez v. Lindberg USA, LLC.* at 2, No. 16-22966-CIV-WILLIAMS (S.D. Fla. October 17, 2016) ("courts have found that a website is a public accommodation for purposes of the ADA if there is a sufficient "nexus between the challenged service and the place of public accommodation"); *Nat'l Fed. Of the Blind v. Target Corp.,* 452 F. Supp.2d 946 (N.D. Cal. 2006) (retailer's website was a place of public accommodation subject to the ADA because website had a sufficient nexus to the physical store). This interpretation coincides with the Ninth Circuit's construction of "place of public accommodation" in 42 U.S.C. § 12182(a) to include defendants whose operations could be discriminatory through contractual, licensing, or other arrangements with a place of public accommodation. *Disabled Rights Action Comm. v. Las Vegas Events,* 375 F.3d 861, 873 (9th Cir., 2004) (finding the prohibition of discrimination by public accommodations in 42 U.S.C. § 12182(b) required an expansive interpretation of "place[s] of public accommodation" in 42 U.S.C. § 12182(a) to include non-owners in a suit in order to stop discriminatory practices). There is a significant nexus between Defendants and a place of public accommodation when, as a result of Defendants' actions, Plaintiff may be denied services of a public accommodation.

When operations -- through contractual, licensing, or other arrangements -- deny the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, a private entity may not rely on lack of ownership to avoid their obligation to the ADA. *Disabled Rights Action Comm. v. Las Vegas Events*, 375 F.3d 861, 873 (9th Cir., 2004) ("These provisions[, in 42 U.S.C. § 12182(b),] make clear that private entities otherwise covered by Title III may not avoid their obligations through contract, such as by contracting to provide "goods,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
Page 15 of 17



CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

services, facilities, privileges, advantages, or accommodations" at venues they do not own."). Section 12182(b)(1)(A)(i) provides:

> It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

(emphasis added) 42 U.S.C. § 12182(b) (2017); see also § 12182(b)(1)(A)(ii) (making it "discriminatory" to afford to disabled persons, "through contractual, licensing, or other arrangements," an opportunity to "participate in or benefit from" such goods, services, facilities, and accommodations that is not equal to that afforded to other individuals); § 12182(b)(1)(A)(iii) (making it "discriminatory" to provide to disabled persons, "through contractual, licensing, or other arrangements," a benefit that is "different or separate from" that provided to other individuals). In the present case, Defendants are denying an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation. Specifically, Defendants do not provide an equal opportunity to purchase accessible tickets on its resale website and Defendants discriminate by failing to identify wheelchair accessible seating when they have the information available ab initio.

No additional parties need to be joined as a party simply to satisfy semantics. Defendants alone can fix their website. No parties must be joined for the court to complete relief among existing parties.

## CONCLUSION

Plaintiff has shown that he is denied public accommodations by Defendants because of his disability. Plaintiff requires the use of a wheelchair and Defendants' website fails to properly identify wheelchair accessible seating. Plaintiff is deterred from using Defendants' website. Plaintiff's claims are not moot; they are ongoing. Plaintiff has requested changes and compliance with these ADA regulations is not optional for Defendants. Plaintiff's claims are reasonable and necessary to avoid discrimination. The fact that Defendants use a seating chart that shows the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
Page 16 of 17



CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM

location of accessible seating on their direct sales website demonstrate that it is readily achievable for a multibillion-dollar company that specializes in ticket sales. There are no indispensable parties in the present case. Plaintiff is entitled to summary judgment and relief.

Dated January 8, 2018

/S/Christopher Carney
CHRISTOPHER R. CARNEY, WSBA NO. 30325

/S/Conrad Reynoldson
CONRAD REYNOLDSON, WSBA NO. 48187
Attorneys for Plaintiff Barry Long

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 17 of 17
Long v. Live Nation, ET AL., 16-cv-01961-TSZ

CARNEY GILLESPIE ISITT PLLP
600 1st Ave, Suite LL08
SEATTLE, WA 98104
MAIN / FAX 206•445•0220
WEB WWW.CGILAW.COM