5
6          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
                     AT SEATTLE

7   BARRY LONG,

8                  Plaintiff,

9        v.                                    C16-1961 TSZ

10  LIVE NATION WORLDWIDE,                     ORDER
    INC., AND TICKETMASTER LLC,
11
                   Defendants.
12

13       THIS MATTER comes before the Court on plaintiff's motion for summary

14  judgment, docket no. 18 ("Plaintiff's Motion"), and defendants' cross-motion for

15  summary judgment, docket no. 38 ("Defendants' Cross-Motion"). Having reviewed all

16  papers filed in support of, and in opposition to, the motions, and hearing oral argument on

17  the motions, the Court enters the following order.

18  **Background**

19       Plaintiff Barry Long ("Plaintiff" or "Long") brings a disability discrimination

20  action alleging violations of Title III of the Americans with Disabilities Act ("ADA") and

21  the Washington Law Against Discrimination ("WLAD"). *See* First Amended Complaint

22  for Damages and Injunctive Relief, docket no. 16 (the "Amended Complaint"), at ¶¶ 5.1–

23

ORDER - 1

5.24. Plaintiff uses a wheelchair to attend Seahawks football games at CenturyLink Field. *See* Declaration of Barry Long, docket no. 19 ("Long Declaration"), at ¶¶ 3, 5–6. Defendant Ticketmaster LLC is the wholly owned subsidiary of Defendant Live Nation Worldwide, Inc. (collectively, "Defendants"). Defendants operate the website www.ticketexchangebyticketmaster.com (the "Exchange Website"). *See* Declaration of Brian Luna, docket no. 22-1 ("First Luna Declaration"), at ¶ 1. The Exchange Website connects fans wishing to resell sporting tickets they own to fans wishing to purchase those tickets. *See id.* at ¶ 4. When this lawsuit was filed in 2016, Defendants did not sell its own tickets on the Exchange Website—instead, they offered direct ticket sales through an affiliated website, www.ticketmaster.com (the "Retail Sales Website"). *Id.* at ¶¶ 4, 5.

## I. Plaintiff's Allegations

The essence of Plaintiff's claims is that he was unable to find wheelchair accessible tickets that met his needs when using the Exchange Website. Plaintiff specifically alleges that he has "encountered a number of barriers to access to tickets to CenturyLink Field[,]" including the Exchange Website's lack of "information for accessible seats in violation of the applicable standards under the ADA and WLAD." Amended Complaint at ¶ 4.6. He alleges that "[w]hen attempting to purchase tickets through the Website, it is impossible to identify which seats are wheelchair accessible. This has prevented Plaintiff from purchasing tickets for accessible seating." *Id.* at ¶ 4.7.

Plaintiff asserts that Defendants have discriminated against Plaintiff in violation of Title III of the ADA by: (1) providing "goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded to non-disabled individuals;"

and (2) by "[f]ailing to make reasonable modifications in policies, practices, and/or procedures as necessary to afford the goods, services, facilities, privileges, advantages, and/or accommodations to individuals with disabilities." *Id.* at ¶ 5.9; *see also id.* at ¶¶ 5.19, 5.21 (corresponding WLAD allegations).

## II. The Exchange Website

### A. The Original Version

Since Plaintiff initiated this lawsuit, the Exchange Website has been a moving target. Plaintiff filed his original complaint on December 22, 2016. *See* docket no. 1. At that time, the Exchange Website did not include information identifying which available CenturyLink tickets were wheelchair accessible. *See* Long Declaration at ¶ 12, Exhibit B. Instead, the Exchange Website contained a list of available tickets organized by section, row, price, and quantity—without distinguishing between accessible and non-accessible seats. *See id.* Next to this list was an "Interactive Seating Chart" showing a drawing of CenturyLink stadium and depicting which sections contained available tickets. *Id.* The Interactive Seating Chart also did not specify which available seats were wheelchair accessible, as follows:



Long Declaration, Exhibit B (screenshot taken on or before May 18, 2017).

B. **The Interim Version**

On May 18, 2017, Plaintiff filed this Motion for Summary Judgment arguing that the original Exchange Website violated the ADA. *See* docket no. 18. Sometime after the Motion was filed, Defendants modified the Exchange Website to include (1) a "Click here for ADA Locations" link in the top right-hand corner of the webpage displaying the CenturyLink seating chart; and (2) an option to view "More Details" of a particular ticket, as follows:



*See* First Luna Declaration, ¶ 9, Exhibit 1 (highlighting added).  By clicking on the "Click here for ADA Locations" link, the Exchange Website displayed a chart of purportedly accessible seats by section and row:

| Section | Row | First Seat | Last Seat | # of Seats |
|---|---|---|---|---|
| 100A | J | 1 | 1 | 1 |
| 100A | J | 5 | 5 | 1 |
| 100A | J | 8 | 8 | 1 |
| 100A | J | 9 | 9 | 1 |
| 100A | J | 13 | 13 | 1 |
| 100A | J | 14 | 14 | 1 |
| 100A | I | 18 | 18 | 1 |

Note: Venues are solely responsible for establishing their own accessible seating ticket locations and policies. Some venues sell all or a portion of their accessible seating tickets only through their box office and not through Ticketmaster.

*See id.*, Exhibit 2.  This chart, however, did not differentiate between wheelchair accessible seats and corresponding companion seats (which are not wheelchair accessible).  *See* Declaration of Christopher Carney in Support of Plaintiff's Reply to Defendants' Supplemental Brief, docket no. 37, at ¶¶ 4–8, Exhibits B–F.

Clicking on the "More Details" link provided potential purchasers with additional specifications about the corresponding seat, including information about whether the seat was wheelchair accessible:



Declaration of Bradley J. Leimkuhler in Support of Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Summary Judgment, docket no. 34-1 ("Leimkuhler Declaration"), Exhibit A (highlighting added). Persons selling tickets were not required to include any specific information about the accessibility of a given seat. Thus, potential purchasers of wheelchair accessible seats were still not guaranteed sufficient information to determine whether a particular seat met their needs.

### C. The Current Version

On April 19, 2018, before oral argument but after initial briefing on the pending cross-motions for summary judgment,[1] Defendants discontinued the disputed portions of the Exchange Website. *See* Declaration of Brian Luna in Support of Defendant's Supplemental Briefing on Motions for Summary judgment, docket no. 47-1 ("Second Luna Declaration"), at ¶ 4. Now, Defendants contend that anyone attempting to purchase Seahawks tickets on the Exchange Website would be redirected to the Retail Sales Website, which shows all seats available for all games at CenturyLink Field—including all available wheelchair and companion seats. *See id.* at ¶ 4, Exhibits 1–7 to Second Luna Declaration (depicting the process through which a customer would use the Retail Sales Website to purchase a wheelchair or companion ticket). Defendants apparently made these most recent changes as a result of the pending hearing that had been

---

[1] On June 30, 2017, the Court granted Defendant's request for relief under Federal Rule of Civil Procedure 56(d) and additional discovery, *see* docket no. 22, and ordered supplemental briefing on Plaintiff's Motion to be completed by December 8, 2017. After the parties completed their supplemental briefing, Defendants filed their Cross-Motion on December 21, 2017. *See* docket no. 38. The Court heard oral argument on the cross-motions for summary judgment on May 18, 2018. Docket no. 44.

scheduled for May 18, 2018.  *See* docket no. 43.  Both Plaintiff and the Court were completely surprised by this evidence—which Defendants did not disclose until the day of the hearing.  As a result, the Court again ordered supplemental briefing to determine the effect of the most recent changes to the Exchange Website.  *See* docket no. 44.

Notwithstanding the most recent changes, the Retail Sales Website still provides options for non-accessible seats that it does not provide for accessible seats.  Specifically, the Retail Sales Website gives potential purchases the option to view all tickets by "Lowest Price" or "Best Seat," as follows:



*See* Declaration of Danna Patterson, docket no. 49 ("Patterson Declaration"), Exhibit 1.

Purchasers browsing for accessible seats do not have this option:



*Id.*, Exhibit 3.

**<u>Discussion</u>**

I. **Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Alternatively, a movant must show that the plaintiff lacks competent evidence to support an essential element of his or her claim. *Id.* at 322; *Luttrell v. Novartis Pharms. Corp.*, 894 F. Supp. 2d 1324, 1340 (E.D. Wash. 2012). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## II. Analysis

Plaintiff asserts that Defendants "discriminated" against him by excluding him from participating in a public service. Relying on the updated Exchange Website and Retail Sales Website, Defendants argue that the Exchange Website is not a place of public accommodation falling within the purview of the ADA and, in any event, Plaintiff's discrimination claims are now moot because all accessible tickets are now sold in the same course and manner as all other tickets through the Retail Sales Website. *See* Defendant's Supplemental Brief in Support of Motion for Summary Judgment, docket no. 46 ("Defendants' Supplemental Brief") at 1–3. Plaintiff responds that the voluntary cessation of the conduct challenged in the Amended Complaint is insufficient to moot Plaintiff's claims. *See* Plaintiff's Brief in Opposition to Defendants' Supplemental Brief, docket no. 48 ("Plaintiff's Supplemental Brief"), at 4–5.[2]

### A. Defendants' Voluntary Cessation of the Challenged Conduct did not Moot Plaintiff's Claims.

"A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quotations omitted) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)). "Because a private plaintiff can sue only for injunctive relief (i.e., for removal

---

[2] While Plaintiff acknowledges that "the present website does identify wheelchair accessible seating and location," he argues that "[t]he website's view allows filtering the available standard seating by price or by better view, and this filtering option is not an option for available wheelchair seating." *Id.* at 4.

of the barrier) under the ADA, a defendant's voluntary removal of the alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Store Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (citations omitted). However, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Rosebrock*, 745 F.3d at 971 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012)). As such, an ADA defendant can only moot a claim through voluntarily ceasing the challenged conduct if it meets a "stringent" standard: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "The party asserting mootness bears a 'heavy burden' in meeting this standard." *Id.*

Applying this standard, Defendants' mootness argument fails. Defendants have not put forth sufficient evidence suggesting that the challenged conduct will not recur. All the record shows is that Defendants changed the website by first adding a "Click here for ADA Locations" link and a "More Details" option. Then, right before the summary judgment hearing, Defendants abandoned the Exchange Website altogether by redirecting traffic to the Retail Sales Website. This evidence showing that Defendants voluntarily modified the Exchange Website throughout the pendency of this litigation is, without more, insufficient to moot Plaintiff's claims. *See Brooke v. A-Ventures, LLC*, No. 2:17-cv-2868-HRH, 2017 WL 5624941, at *3–4 (D. Ariz. Nov. 21, 2017). If anything,

Defendants' numerous changes to the Exchange Website since this lawsuit started showcases just how easy it is for Defendants to change their websites. Defendants could just as easily abandon the Exchange Website at any point in the future and revert back to one of the earlier versions. Indeed, Defendants have made no attempt to put forth any evidence to the contrary. For these reasons, the case is not moot and Defendants are not entitled to summary judgment on this basis. Defendants' Cross-Motion is therefore denied.

### B. The Exchange Website is a Place of Public Accommodation.

An ADA claim is only viable if the defendant "owns, leases, or operates a place of public accommodation" to which the claimant was denied access. *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1113–14 (9th Cir. 2000) (ADA only applies to the services of a place of public accommodation). To demonstrate a place of public accommodation, District courts sitting within the Ninth Circuit merely require a "nexus" between "the good or service complained of and an actual physical place." *See, e.g.*, *Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKx), 2017 WL 4457508, at *3 (C.D. Cal. Oct. 3, 2017) (citing *Weyer*, 198 F.3d at 1114). Here, it is undisputed that the Exchange Website provides a medium to buy and sell tickets to football games at CenturyLink field.[3] Plaintiff alleges that he was unable to attend a football game at

---

[3] The direct relationship between the Exchange Website and CenturyLink stands in contrast to the more attenuated relationships at issue in the cases Defendants rely on. Notably, Defendants' reliance on the Ninth Circuit's unpublished memorandum disposition in *Earll v. eBay, Inc.*, 599 Fed. Appx. 695 (9th Cir. 2015) is entirely misplaced. Unlike the case at hand, the Court in *Earll* affirmed dismissal of an ADA claim that failed to allege any connection between eBay's services and any physical place. *See id.*

CenturyLink field because of the barriers he encountered while attempting to purchase tickets using the Exchange Website. *See, e.g.*, Amended Complaint at ¶ 4.6. CenturyLink is a physical, brick-and-mortar place and the Exchange Website and Retail Sales Website are services that allow patrons to purchase tickets for football games at CenturyLink. Thus, the Court concludes that the Exchange Website is subject to the accessibility regulations under the ADA as a matter of law.

### C. ADA and WLAD Violations

"The ADA statute (42 U.S.C. § 12132) is analogous to the WLAD statute (RCW 49.60.215), which makes it an unlawful practice for a public entity to discriminate against any individual with respect to his or her disability." *Abernathy v. Valley Med. Ctr.*, No. C06-001MJP, 2006 WL 1515600, at *6 (W.D. Wash. May 25, 2006) (Pechman, J.). To prevail on a discrimination claim under the ADA and WLAD, a plaintiff must show that: "(1) he is [a] qualified individual with a disability; (2) he was either excluded from participation or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Id.* (quoting *Weinreich v. Los Angeles Cty. Metro. Trans. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (ADA); *Fell v. Spokane Transit Auth.*, 128 Wash.2d 618, 637, 911 P.2d 1319 (1996) (WLAD)).

The ADA generally prohibits public accommodations from denying a qualified individual from "participat[ing] in or benefit[ing] from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

42 U.S.C. § 12182(b)(1)(A)(ii) (2018).  It specifically defines discrimination to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ."  42 U.S.C. § 12182(b)(2)(A)(ii) (2018).  The ADA's implementing regulations require public entities that sell tickets to, "upon inquiry," (1) "[i]dentify and describe the features of available accessible seating in enough detail to reasonably permit an individual with a disability to assess independently whether a given accessible seating location meets his or her accessibility needs;" 28 C.F.R. § 35.138(b)(2) (2018), and (2) provide "seating charts, maps, plans, brochures, pricing charts, or other information" identifying wheelchair accessible seating and related information "with the same text or visual representations as other seats, if such materials are provided to the general public."  28 C.F.R. § 35.138 (b)(3) (2018).

### i. The Original Exchange Website Violated the ADA and WLAD.

The Court is satisfied that the Exchange Website violated the ADA and WLAD when this lawsuit was initiated.  It is undisputed that Plaintiff is a qualified individual with a disability.  Plaintiff was unable to attend a Seahawks game at CenturyLink field because the Exchange Website did not provide enough information to determine which tickets were for wheelchair accessible seats.[4]  In other words, Plaintiff was excluded from

---

[4] Plaintiff specifically states that "[a]s of the date of the lawsuit there has been no practical way to determine which available NFL ticket exchange tickets for Seahawks games are wheelchair accessible.

enjoying CenturyLink's services by reason of his disability. Such exclusion is black letter discrimination, *see* 42 U.S.C. § 12182(b)(1)(A)(ii) (2018), and Defendants have failed to raise any genuine issue of material fact to the contrary. Instead, Defendants' primary opposition is that these claims are now moot which, as explained above, is unavailing.[5] Plaintiff's Motion is granted with respect to the Exchange Website as it existed when the Amended Complaint was filed.

### ii. Issues of Fact Exist as to Whether the Updated Exchange Website Violates the ADA and WLAD. [6]

Genuine issues of material fact exist as to whether the subsequent versions of the Exchange Website violate the ADA and its implementing regulations, including the requirements that a public accommodation provide enough information to reasonably allow an individual to determine whether a seat meets his or her accessibility requirements and to identify accessible seats with the same visual representations used in materials provided to the general public. These same issues of fact preclude judgment as a matter of law on Plaintiff's WLAD claim. The Motion is therefore DENIED with

---

The specific seats were not shown anywhere on the website." Long Declaration at ¶ 9. Defendants do not refute this statement.

[5] Defendants also suggest that Plaintiff's Motion should be denied for failing to join all necessary parties. This argument is without merit. The Complaint asks for injunctive relief requiring Defendants to change the Exchange Website to comply with the ADA and the WLAD. Defendants have sole control over the design and functionality of the website and have failed to demonstrate that any other party is "indispensable" for purposes of this lawsuit.

[6] Because the Court finds that the original Exchange Website violated the ADA and WLAD and that issues of fact preclude summary judgment for the later versions of the Exchange Website, the Court denies as moot Plaintiff's request to exclude new evidence. *See* Plaintiff's Supplemental Brief at 6–11.

respect to the later versions of the Exchange Website employed after this lawsuit was commenced.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's Motion is GRANTED in part and DENIED in part.

(2) Defendants' Cross-Motion is DENIED.

(3) Within fourteen (14) days of this Order, the parties are DIRECTED to file an updated Joint Status Report identifying what issues remain before the Court, explaining what additional discovery is anticipated, and proposing when this case can be set for trial.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 23rd day of July, 2018.

Thomas S. Zilly
United States District Judge